# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-1999V
UNPUBLISHED

| | |
|---|---|
| ANGELA LYNCH,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: May 21, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Emilie Williams*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On December 21, 2017, Angela Lynch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on November 4, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Respondent states that he is unable to formulate a position on the merits of this case because there is a lack of evidence establishing that the vaccine at issue in this case was administered in Petitioner's right arm, as alleged. Respondent's Report ("Resp. Rpt.") at 1-2. For the reasons discussed below, I find that the flu vaccine Petitioner received in November 2016 was more likely than not administered in her right arm.

## I.  Relevant Procedural History

As noted, the case was initiated in December 2017, and Petitioner spent the initial months of its existence filing medical records. On October 9, 2018, Respondent filed a status report requesting clarification on whether the vaccine at issue was in fact administered in Petitioner's right shoulder. (ECF No. 19). Respondent noted that Petitioner's proof of vaccination was either illegible (Exhibit ("Ex.") 1) or identified Petitioner's left shoulder as the site of vaccination (Ex. 11 at 3). Former Chief Special Master Dorsey ordered Petitioner to investigate whether there were any additional documents or evidence to establish that she received the November 4, 2016 flu vaccination in her right shoulder. (ECF No. 20)

On November 21, 2018, Petitioner filed a status report stating that despite numerous attempts, she had been unable to obtain additional clarification regarding the injection site of the flu vaccine. (ECF No. 21). Petitioner maintained that the vaccine administration record that noted that the vaccine was administered to her left shoulder was an error, and she noted that all treatment records consistently identify her right arm as the vaccinated shoulder. *Id*. Petitioner requested that a ruling be made based on the evidence available in the record. *Id*.

On June 18, 2019, a telephonic status conference was held. (ECF No. 22). Petitioner's counsel requested authorization to issue a subpoena to the pharmacy or to the parent company to obtain any and all information related to Petitioner's record of vaccination. *Id*. The parties discussed how to proceed and agreed that resolution of the administration issue on the papers would be appropriate after all additional information was obtained and filed into the record. *Id*.

Petitioner served the subpoena on Rite Aid Corporation ("Rite Aid"), but despite her numerous and diligent efforts, she was unable to obtain any further documentation. Petitioner's counsel was informed by in-house counsel for Rite Aid that "for whatever reason the records are not available." (ECF No. 28). Counsel for Rite Aid also indicated "that Rite-Aid no longer operates any stores in the State of Tennessee." *Id*. The attorney for Rite-Aid did provide Petitioner with a screenshot of its "Medication History" record request for Petitioner which shows "No records found for the date range 01/01/1999-11/05/2019." Pet. Ex. 13 at 1.

On March 20, 2020, Respondent filed his report pursuant to Vaccine Rule 4(c). (ECF No. 33). In it, Respondent states that although the Petition and accompanying documents have been reviewed by medical personnel of the Division of Injury Compensation Programs, Department of Health and Human Services, "they have been unable to formulate a position on the merits of the case given the lack of evidence establishing the administration of a vaccination." *Id*. at 1. Respondent stated that because Petitioner had not substantiated that the vaccination was given in her right arm, the petition should be dismissed. Id. at 7. In the alternative, Respondent requested a ruling regarding the site of administration. *Id*.

On March 31, 2020, Petitioner filed a "Motion to Compel and to Set Briefing Schedule." (ECF No. 34). Petitioner argued that the Rule 4(c) report was "entirely non-responsive" as Respondent failed to provide a position on the case and state whether Petitioner had met the criteria for a Table SIRVA injury. Petitioner further argued that Respondent provided no medical analysis as is required under Vaccine Rule 4(c). *Id*. at 2. Petitioner moved for an order striking the Rule 4(c) report and compelling Respondent to file a more substantive report. *Id*. at 3.

On July 13, 2020, Petitioner filed a motion for a factual ruling regarding the site of administration of the November 4, 2016 flu vaccination. (ECF No. 38). On August 12, 2020, Respondent filed a response (ECF No. 39) simply stating that he joins in Petitioner's request for a ruling on the site of administration based on the record. On August 27, 2020, Petitioner filed a reply. (ECF No. 40). The issue of the site of vaccine administration is now ripe for resolution.

## II.     Issue

At issue is whether Petitioner received the vaccination alleged as causal in her right arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in

the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of*

4

*Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

IV.     **Finding of Fact**

I make these findings after a complete review of the record, including all medical records, affidavits, the motion and response, and other evidence filed. Specifically, I rely upon the following evidence:

- Ex. 1 at 1-6, is a vaccination record from Rite Aid establishing that a flu vaccine was administered to Petitioner on November 4, 2016. This record, while difficult to read due to the copying of the document, has "R" circled, suggesting Petitioner's right deltoid as the administration situs. A note from Pharmacist, Anthony R. Blair, states that "Immunization Consent forms won't print off any darker than this. Patient received flu shot on 11/04/2016 at the Rite Aid Pharmacy on 1128 Fort Campbell Blvd, Clarksville 37042 (Tennessee) Anthony R Blair Pharmacist." *Id*. at 4.

- Ex. 11 at 1, a Rite Aid Pharmacy Prescription Form confirms that a "flu shot" was administered to Ms. Lynch on November 4, 2016. However, the prescription details form indicates that the site of administration is "Left Upper Arm." *Id*. at 3. I note that this is the only document in the entire record that indicates or even suggests that Petitioner received the vaccine in her left arm.

- Ex. 8 at 3, a certified record from Maxwell Clinic dated November 17, 2016, less than two weeks following vaccination, documents that Petitioner complained of "right deltoid area pain after having a flu shot on 4 November. P[atien]t states she had pain down the arm at the time of injection. An assessment of "Arm pain" was made. *Id*. at 5. Petitioner was prescribed medication for pain and inflammation and encouraged to use heat on the affected area. *Id*.

- Ex. 6 at 59. On November 30, 2016, less than four weeks after the November 4, 2016 vaccination, Petitioner had a follow-up appointment for her knee surgery with Dr. Cabrera. Pet. Ex. 6 at 59. She reported pain in her right shoulder following her flu shot. *Id.* She reported problems moving her shoulder and rated her pain as 10/10. *Id.* On exam, she had good mobility but pain with shoulder abduction. *Id.* Dr. Cabrera diagnosed Parsonage-Turner syndrome and prescribed a Medrol Dosepak. *Id.* Dr.

Cabrera noted: "[I]t sounds like she has developed some inflammation from the injection of the flu shot." *Id.*

- Ex. 5 at 1, On December 15, 2016, Petitioner presented to a physician assistant ("PA") at the Bone and Joint Group complaining of right shoulder/arm pain for approximately six weeks. Pet. Ex. 5 at 1. She reported pain since receiving her flu shot and described it as located in the lateral shoulder and radiating down the right arm. *Id.* The PA diagnosed right shoulder pain and subacromial bursitis, administered a steroid injection, prescribed Pennsaid (a nonsteroidal anti-inflammatory), and referred Petitioner to physical therapy. *Id*. at 1-2.

- Ex. 5 at 2, dated December 26, 2016, from Bone & Joint Group states that Petitioner reported that the pain in her right shoulder has decreased since receiving the steroid injection.

- Ex. 4 at 2, a certified record from Star Physical Therapy dated December 30, 2016, reports that Petitioner stated that she was injured by a flu shot on November 4, 2016. She reported an onset of symptoms "immediately following injection. Pt states she felt a sharp pain radiate from R shoulder to R elbow." Petitioner received treatment to her right shoulder.

- Ex. 12 at 1, a record from Covenant Family Practice dated March 16, 2018, notes that Petitioner complained of right shoulder pain. The note states "The location of the pain is deep. It radiates to the arm. The pain initially started 2 years ago. The apparent precipitating event was started since flu shot in 2016." On exam, Petitioner had decreased range of motion of her right shoulder and noted pain. Id. at 3.

- Ex. 13 at 1. Rite Aid provided a screenshot of its search for records for Petitioner and it is noted "No records found for the date range of 01/01/1999 – 11/05/2019."

- Ex. 14 at 1-2. Rite Aid provided a certification of records confirming that there are no records related to Petitioner.

- Ex. 9, Petitioner's affidavit, at ¶1, where Petitioner recalls receiving the flu shot in her right arm from a Rite Aid Pharmacy. Petitioner stated:

    When the pharmacist administered the shot, I felt pain that traveled down my arm all the way to my elbow. Right after receiving the shot, my arm was sore and ached in pain. A few hours later, it hurt

> to move my arm in all directions. That night I could not sleep without the pain waking me up. My arm hurt when I tried to reach across my body, and when reaching overhead…
>
> Lastly, it was extremely difficult obtaining my flu shot record from Rite Aid. At first they said they did not have a record. Then they said they threw the hard copy away and all they had was a scanned copy on file. I have had to go to the pharmacy at least 4 times and have talked to the pharmacist over the phone a couple of times. They also told me that the person who gave me the shot no longer works for Rite Aid.

Ex. 9 at ¶¶ 1, 6.

- Petitioner filed a supplemental affidavit, as well as several witness declarations from her co-worker, mother, and husband, who all describe Petitioner as having no right arm pain prior to her November 4, 2016. Each describes observing Petitioner complaining about right shoulder pain as a result of her November 4, 2016 flu vaccination. (Exs. 15-18). Notably, David Lynch, Petitioner's husband, accompanied Petitioner to Rite-Aid and received a flu vaccination at the same time as Petitioner. He averred that right after Petitioner's received the vaccine, Petitioner told him that "she had felt the vaccine go down her right arm and it hurt to move." Ex. 18 at 1.

The above records and witness statements preponderantly support the conclusion that the November 4, 2016 flu vaccine Ms. Lynch received was likely administered in her right arm. Although Ex. 11 records the site of vaccination as Petitioner's left deltoid, the preponderance of the evidence indicates that the vaccine was more likely administered in Petitioner's right arm. Indeed – virtually *all* evidence in the record temporally thereafter supports that allegation. In particular, in seeking treatment Petitioner consistently related her right shoulder pain to her November 2016 flu vaccination. I agree and confirm Petitioner's observation that the ten medical record exhibits, created by five different medical providers, consistently associate Petitioner's right shoulder pain with the flu shot she received on November 4, 2016. Petitioner's Motion for Factual Ruling ("Pet. Mot.") at 8. (ECF No. 38). I also find significant that many of these records were created close in time to the administration of the vaccination. The very first medical record created two weeks after vaccination (November 17, 2016) specifically notes that Petitioner was experiencing pain to her right shoulder immediately after the injection. Ex. 8 at 3.

By contrast, there is limited evidence suggesting the left arm was the situs of administration. The sole record from Rite Aid which indicates the vaccination at issue was

administered in Petitioner's left upper arm cannot even be corroborated by other records from Rite Aid - namely the Vaccine consent prepared by Rite Aid, which has the letter "R" circled on the form, further supporting the conclusion that Petitioner's right arm was vaccinated. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs*., 968 F.2d 1226 (Fed. Cir. 1992).

Accordingly, I find there is preponderant evidence to establish that the vaccination alleged as causal in this case was, more likely than not, administered in Petitioner's right arm on November 4, 2016. Thus, Petitioner's motion for a fact ruling is granted.

### V. Scheduling Order

Petitioner should proceed with preparing a settlement demand, with supporting documentation, for Respondent's consideration.

**Accordingly, the following is ORDERED:**

(1) **Petitioner shall file all updated medical records by <u>Friday, June 25, 2021.</u>**

(2) **Respondent shall file, by no later than <u>Friday, June 25, 2021</u>, a status report indicating his position in light of this ruling. I strongly encourage the parties to discuss an informal resolution of this case.**

(3) **Additional proceedings will be set after the information in this Order is filed.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master